IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-2583-PSF-CBS

RUTH LUST,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois corporation,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter comes before the Court on defendant's Motion for Summary Judgment (Dkt. # 13), filed March 28, 2005. Plaintiff filed her response to the motion on April 22, 2005 (Dkt. # 18). Defendant filed its reply on May 6, 2005 (Dkt # 20). On January 23, 2006, a Final Pretrial Order was entered in this case and it was set for a trial to the Court for April 24, 2006. The matter is ripe for determination. The Court has determined that a hearing on the motion will not materially advance its understanding.

**BACKGROUND**

The dispute between the parties centers upon plaintiff's automobile insurance coverage. The following facts are uncontested. On September 5, 2002, Plaintiff Ruth Lust was involved in a two-car accident on Highway 36 in Estes Park, Colorado. A vehicle driven by Benjamin McCleary pulled out in front of Ms. Lust, causing their two vehicles to collide and Ms. Lust to sustain serious injuries. At the time of the accident, Ms. Lust was insured under an automobile insurance policy issued by Defendant State

Farm Mutual Automobile Insurance Company's ("State Farm"), Policy No. 625 8626-E28-06D ("the insurance policy"). The insurance policy provided the minimum required Personal Injury Protection ("PIP") of $50,000 in medical and $50,000 in rehabilitation benefits (Defendant's Motion at 3; Plaintiff's Response at 3-4).

**PLAINTIFF'S COMPLAINT**

Plaintiff commenced this action in Larimer County District Court on August 31, 2004. On or about November 11, 2004, plaintiff filed an amended complaint in Larimer County District Court. On December 15, 2004, State Farm timely removed the case to this Court. On February 24, 2005, plaintiff filed an unopposed motion for leave to file a Second Amended Complaint, which was granted on February 28, 2005.

In addition, to the above facts, plaintiff alleges that her injuries are so severe that her medical and rehabilitation costs have exceeded $100,000 PIP limits in her policy. Second Amended Complaint, ¶ 8. Plaintiff alleges that she made a claim for PIP benefits in excess of the policy limits, which was denied. *Id.*, ¶¶ 9, 15. Plaintiff's Second Amended Complaint seeks reformation of the insurance policy "without dollar or time limitations" based on her allegation that State Farm failed to make an adequate offer of "enhanced" PIP benefits as allegedly required by C.R.S. § 10-4-710(2)(a), which was in effect at the time she purchased her policy.[1] *Id.*, ¶¶ 10, 12. The complaint also sought treble damages, interest and attorneys' fees pursuant to C.R.S.

---

[1] C.R.S. § 10-4-710(2)(a), in effect at the time plaintiff purchased her policy and at the time of the accident, provided: "Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in § 10-4-706, at the option of the named insured: . . . ." This statute was repealed effective July 1, 2003.

2

§ 10-4-708 (1.7) and (1.8).  *Id.*, ¶¶ 17, 18.  However, in response to Defendant's Motion, plaintiff has  "confessed" her claims under C.R.S. § 10-4-708 (Plaintiff's Response at 3) and therefore those claims are dismissed.  Thus only her claim for reformation of the policy limits remains before the Court.

**DEFENDANT'S MOTION  AND PLAINTIFF'S RESPONSE**

State Farm contends that the undisputed facts show that it did offer plaintiff enhanced PIP benefits, in accordance with C.R.S. § 10-4-710(2)(a).  It asserts that such benefits were made available to her in several policy renewal notices and accompanying "News and Notes" pamphlets which were mailed to plaintiff before the date of the accident.

Specifically, State Farm has submitted an affidavit by Mr. Richard Weitzel, its Greeley Operations Center Systems Coordinator, who attests that he is familiar with the policy-related material mailed to plaintiff (Weitzel Affidavit, Exhibit C to Defendant's Motion, ¶ 3).  Mr. Weitzel states that on or about October 21, 2001, defendant mailed plaintiff an Auto Renewal Notice and a newsletter titled "News and Notes," copies of which are attached as Exhibits G and H, respectively, to defendant's motion (*Id.* at ¶ 6.) The Auto Renewal Notice, pertaining to the policy period of November 28, 2001 through May 28, 2002 contains the following language:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**-**You can purchase higher Personal Injury Protection coverage limits with no deductible.**
>
> Coverage P4 semi-annual Premium = $88.38
> Coverage P8 semi-annual Premium = $85.86
>
> See the enclosed News and Notes article for an explanation of these coverages.

Exhibit G to Defendant's Motion.  The accompanying "News and Notes" pamphlet contained an explanation of these enhanced coverages, beyond the cost and availability.  Specifically, the "News and Notes" contained the following language:

> **Enhanced PIP coverage limits are available**
>
> Colorado auto insurance law requires that you purchase at least the basic level of personal injury protection (PIP or no-fault) coverage.  This coverage is called "P1."  P1 coverage provides mandatory basic coverage limits for medical and rehabilitation expenses, loss of gross income, essential services, and death resulting from injuries sustained in a motor vehicle accident.
>
> Policyholders have the option to choose higher levels of PIP coverage (called "enhanced PIP benefits")–two of which are P8 and P4 coverages–for an additional premium.

Exhibit H to Defendant's Motion.  It goes on to explain P8 and P4 coverages.

Mr. Weitzel also attests that a similar renewal notice and newsletter were sent to plaintiff on or about April 23, 1998 (Weitzel Affidavit, ¶ 7).  He further states that on or about April 22, 1999, defendant sent plaintiff an Auto Renewal Notice which included a pamphlet about no-fault coverage, a portion of which discusses the different PIP options (*Id.* at ¶ 8 and Exhibit J to Defendant's Motion).  Mr. Weitzel attests that all of these notices were mailed to plaintiff in accordance with defendant's regular business practices. The copies of the renewal notices each have plaintiff's name and address printed on them.  Mr. Weitzel also attested that on August 28, 2002, plaintiff requested a change in the coverage of her policy, which was made by State Farm, and therefore the policy number was changed to No. 625 8626-E28-06E.  (*Id.* at ¶ 5).

Plaintiff essentially presents two arguments in opposition to defendant's motion.  First, she denies any knowledge of the enhanced PIP benefits available to her stating

that she "does not remember receiving or reading the notices regarding enhanced PIP coverage."  Plaintiff's Response at 3.  Second, she argues, even assuming she received and read the policy renewal notices and accompanying "News and Notes" pamphlets, these documents "were not sufficiently clear" to constitute offers of enhanced benefits under C.R.S. § 10-4-710(2)(a).  *Id.* at 8.

In support of her opposition plaintiff submits her affidavit in which she states that she does "not know if I actually received those particular renewal notices and 'News & Notes,' but if I did and the enhanced PIP information was actually in those documents, I never read about it."  (Lust Affidavit, Exhibit A to Plaintiff's Response, ¶ 3).  She further states that when she received an insurance premium bill, she "was not in the habit of reading other notes in the bill or other papers that were enclosed with my insurance premium bill."  (*Id.* at ¶ 4).  She also claims that "[i]f I ever read any of that information, I must not have understood what it was about because I never knew that I could have bought greater PIP coverage until after the car accident of September 2002."  (*Id.* at ¶ 5).  Finally, plaintiff states that she has no recollection of any agent from State Farm explaining to her that she could buy greater PIP coverage under her car insurance.  (*Id.* at ¶ 6).

**STANDARD OF REVIEW**

The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Panis*

*v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied,* 514 U.S. 1004 (1995) citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  When applying this standard, a court must view the factual record in the light most favorable to the nonmovant.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  F.R.Civ.P. 56(e);  *Celotex Corp.,* 477 U.S. at 324.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. "  *Id.*

**ANALYSIS**

Under the common law mailbox rule, when a document "is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary

6

course of mail." *Sorrentino v. United States*, 171 F. Supp. 2d 1150, 1152-53 (D. Colo. 2001), quoting *Crude Oil Corp. of Am. v. Commissioner*, 161 F.2d 809, 810 (10th Cir. 1947).  Proof of due mailing constitutes prima facie evidence of receipt.  *Id.* at 1153.

To prove due mailing under the rule, State Farm may present either evidence of actual mailing such as an affidavit from an employee or "present proof of procedures followed in the regular course of operations which give rise to a strong inference that the [document] was properly addressed and mailed."  *Id.* at 1153 citing to *Reading Ventures Ltd. v. United States*, 987 F. Supp. 1315, 1318 (D. Colo. 1997) (internal quotation marks omitted).

Here, State Farm has presented sufficient evidence in the form of Mr. Richard Weitzel's affidavit to show that the Auto Renewal Notices and accompanying "News and Notes" pamphlets were properly addressed and mailed to plaintiff, creating a rebuttable presumption that she did in fact receive the documents.   State Farm also presents evidence that these documents were mailed to the plaintiff in accordance with State Farm's regular business practices.

Plaintiff does not present any probative evidence tending to undermine Mr. Weitzel's affidavit or rebut the presumption that she received the documents. Her bare assertion that she does "not know" if she actually received the documents, or "never read about" the PIP benefits offered in the documents, does not rebut the assertion that they were in fact mailed to her and received.  Nor does her assertion that she "was not in the habit of reading" material delivered with insurance bills, assist her cause.

These renewal notices constituted a portion of plaintiff's auto insurance policy. An insurance policy holder has the responsibility to read her policy. *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265-66 (Colo. App. 1996). Moreover, an insured is charged with knowledge of her policy's terms. *See Pete's Satire, Inc. v. Commercial Union Ins., Co.,* 698 P. 2d 1388, 1391 (Colo. App. 1985), *aff'd sub nom., Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239 (Colo.1987) (the insured was "in possession of this policy and [is] charged with knowledge of the restrictions in the policy."); *see also Unigard Sec. Ins. Co. v. Mission Ins. Co. Trust*, 12 P.3d 296, 300 (Colo. App. 2000); *see also Montez v. American Family Mut. Ins. Co.*, 2005 WL 2893870 *4 (Colo. Dist. Ct., Jun 29, 2005, Hyatt, J.).

Here, State Farm's sufficient proof of mailing the Auto Renewal notices constitutes prima facie proof of receipt by plaintiff. The Court rejects plaintiff's assertion that "State Farm has provided absolutely no evidence that any of [the] mailings were either received by Ms. Lust or, if received, read and/or understood by Ms. Lust." (Plaintiff's Response at 3). After all, it is undisputed that in August 2002 plaintiff requested State Farm to make a change in the PIP coverage of her policy, which at least suggests that she read the policy prior to changing it.

Under C.R.S. § 10-4-710(2)(a), State Farm was only required to "offer" enhanced PIP coverage to plaintiff and was not required to present evidence that plaintiff actually opened or read the information contained within the Notices. Once plaintiff received the documents from her auto insurer about coverages, it was her responsibility to read them.

Having concluded that plaintiff had constructive knowledge of the Auto Renewal Notices and accompanying "News and Notes" pamphlet, this Court must determine whether the language and presentation of these documents constituted a sufficient "offer" of enhanced PIP benefits within the requirements of C.R.S. §10-4-710(2)(a).

Plaintiff correctly notes that reformation of the insurance contract is the proper remedy if enhanced PIP benefits had not been offered (Plaintiff's Response at 8). *See Thompson v. Budget Rent-A-Car Systems, Inc.*, 940 P.2d 987, 990 (Colo. App. 1996). Furthermore, in determining the extent of PIP coverage, the No-Fault Act should be construed liberally in order to advance its purpose of "avoid[ing] inadequate compensation to victims of automobile accidents." *Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1388 (Colo. 1995); *see also Brennan v. Farmers Alliance Mutual Ins. Co.*, 961 P.2d 550, 553 (in extending PIP benefits to pedestrians injured in automobile accidents, noting that "[t]he No-Fault Act is to be liberally construed to further its remedial and beneficial purposes."). However, neither of these assertions set forth by plaintiff have any bearing on the question of whether State Farm did in fact make a statutorily sufficient offer of enhanced PIP benefits. No case cited by plaintiff requires reformation of an auto insurance policy in a case where the plaintiff shows no more than a failure to read or recall what was mailed to her.

Colorado's No-Fault Act does not define the term "offer." Both parties state that there is no decision by the Colorado appellate courts defining an adequate or complying offer under the statute (Defendant's Motion at 12; Plaintiff's Response at 9). However, in *Brennan, supra*, the court did state, in a different context, "all that is required is that the insurer *offer* these extended benefits." *Brennan*, 961 P.2d at 554

(emphasis in original).  And in *Fazio v. State Farm Mut Auto. Ins. Co.*, 55 P.3d 229, 231 (Colo. App. 2002) the court stated, albeit again in a different context, that "[t]he plain meaning of this language is that a named insured who has minimum PIP coverage under § 0-4-706 must be offered an opportunity to purchase certain types of enhanced PIP coverage."

State Farm has provided a copy of an order entered on February 16, 2005 by Judge Roxanne Bailin of the Boulder District Court in which she granted summary judgment for State Farm on facts seemingly identical to those in the instant case. Judge Bailin found that State Farm's mailing of a notice of renewal and "News and Notes" article constituted an offer within the meaning of the statute, as they "outlined the various levels of coverage available" and "the price at which those options could be purchased." (Order, February 16, 2005 in *Buchanan v. State Farm Mutual*, Case No. 03-CV-2248, (Boulder District Court), Exhibit R to Defendant's Motion, at 3). She further stated that "[i]t is difficult to imagine how State Farm could have been any more specific, adequate, and clear in making an offer of " enhanced PIP coverage (*id.*).

State Farm has also cited, by way of supplemental authority to its motion, the recent decision of Judge Nottingham of this Court entered in *Stickley v. State Farm Mut. Auto. Ins. Co.*, 402 F. Supp. 2d 1226 (D. Colo.).  Judge Nottingham, presented there with a State Farm renewal notice and a copy of the "News and Notes" article identical to those offered in this case, applied a definition of "offer" derived from *Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo. 1990), and found that such statements "certainly evinced a manifestation of a willingness to enter a bargain regarding enhanced PIP benefits."  402 F. Supp. 2d at 1235.  He also found that even if there

were some defect in an earlier offer of enhanced PIP benefits, such defect was cured when the insurer sent the renewal notice and "News and Notes" article to the insured in August 1998, some 14 months prior to the accident. *Id.*

On the very similar, if not identical facts before it, this Court finds that State Farm's mailing of the non-renewal notices and the included "News and Notes" article to plaintiff in October 2001, as well as in August 1998, constituted sufficiently clear offers within the meaning of the statute. As in *Buchanan*, the plaintiff's affidavit that she does not remember receiving or reading the documents does not suffice to create an issue of fact to withstand summary judgment. Plaintiff presents no evidence of a genuine issue that the offer was too vague, ambiguous, hidden or arcane for her or any other insured to see and comprehend.

Here, plaintiff makes the related argument that the statements contained in the Auto Renewal Notices and accompanying "News and Notes" articles were not sufficiently clear under the standard set forth by the Colorado Supreme Court in *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (1992), a case referred to in Judge Bailin's order (Plaintiff's Response at 10). Plaintiff urges this Court to analogize the statutorily required offer of UM/UIM benefits in *Parfrey* to the statutorily required offer of enhanced PIP benefits at issue in this case, and on that basis find at least a fact question as to whether State Farm's offer here was adequate under the test outlined in *Parfrey*. *Id.* at 10-16. Plaintiff goes through various factors which were mentioned in *Parfrey* and describes different methods by which State Farm could have made their offer of enhanced PIP benefits to plaintiff more in accordance with these factors (*e.g.* by making an oral offer of enhanced PIP benefits or by providing a hypothetical

11

explaining how enhanced PIP coverage would work), which apparently would have been more satisfactory to plaintiff. Plaintiff's reliance on *Parfrey,* however, is unavailing for at least two reasons.

First, it is far from clear that even *Parfrey* would require the additional precautions the plaintiff describes. Although the *Parfrey* opinion mentions five factors described by the plaintiff, the court there held that "[i]n the final analysis, the determination of the insurer's discharge of its statutory duty to notify the insured of the availability of higher UM/UIM coverage and to offer such coverage to the insured must be resolved under *the totality of circumstances.*" *Parfrey*, 830 P.2d at 913-14 (emphasis added). In adopting the totality of the circumstances test, the court is explicitly not requiring the fulfilment of any single factor. Here, State Farm's offer of enhanced PIP benefits would seem to satisfy the "totality of the circumstances" test for the same reasons set forth above in determining it constitutes a sufficient offer under C.R.S. 10-4-710(2)(a). It is also noteworthy that *Parfrey* did not find a specific written offer to be unsatisfactory, but instead found a genuine issue of material fact about whether a discussion in which the insurance company purported to make an oral offer actually took place. *Parfrey*, 830 P.2d at 914-15. In this case, no such issue of fact exists.

Second, this Court finds that consideration of the *Parfrey* case to be entirely unnecessary. An offer of enhanced PIP benefits simply *cannot* be equated with the offer of UM/UIM benefits in *Parfrey*. The obligations on the part of the insurance company arises out of two completely different statutes. The nature of the obligations created by the two statutes are also different. While C.R.S. § 10-4-710 only requires

an insurance company to "offer" enhanced PIP benefits, C.R.S. § 10-4-609(1) "prohibits an insurer from issuing an automobile liability policy unless UM/UIM coverage is included in the policy, except where the named insured rejects UM/UIM coverage *in writing*." *Parfrey*, 830 P.2d at 912 (emphasis added).  Had the Generally Assembly intended for the offers of enhanced PIP benefits to conform to the same requirements as offers of UM/UIM coverage, it could have required that policy holders also reject these benefits in writing.  However, as the legislature included no requirement, this Court refuses to subject offers made under the two quite different statutes to identical analysis.

The purposes of the two Acts (and the underlying rationale for the required offers of protection) are also different.  The legislation relating to uninsured and underinsured motorist coverage was designed to "assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists."  *See Parfrey*, 830 P.2d at 906.  The purpose of the No-Fault Act was to "avoid inadequate compensation to all victims of automobile accidents." *Coffman v. State Farm Mut. Auto. Insurance Co.*, 884 P.2d 275, 278 (Colo. 1994); *Brennan,* 961 P.2d at 553 (Colo. App. 1997).  Even though these purposes seem similar, the purpose of the No-Fault Act is largely accomplished through the minimum personal injury protection required by the act in § 10-4-706.  Unlike its UM/UIM counterpart, by its terms, an offer of enhanced PIP coverage does not offer *basic* insurance coverage, but *additional* personal injury protection benefits.  This fact, along with the fact that the legislature required a written rejection of UM/UIM coverage

and not enhanced PIP benefits, underscores the greater importance of the contents and presentation of the required offer.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and plaintiff's complaint is DISMISSED. The Clerk of the Court is directed to enter judgment for Defendant State Farm in accordance with this Order.

DATED: January 31, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge